IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GANETTE L. GRIMSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10cv700-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  Introduction**

Contending she was disabled, the plaintiff applied on June 18, 2008, for child's

insurance benefits (CIB) pursuant to Title II of the Social Security Act.  The ALJ found that

Grimsley has severe impairments of "chronic cysts/infections, obesity, migraine-type

headaches, asthma, borderline intellectual functioning, cyclothymic personality disorder, and

history of learning disorder."[1]  (R. at 11)   Her application was denied at the initial

administrative level.   The plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ").   Following the hearing, the ALJ also denied her claim.

The Appeals Council rejected a subsequent request for review.   The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

---

[1]  In her application for benefits Grimsley claimed she was disabled due to a learning disability, asthma, narcolepsy, and migraines. (R. at 125) Upon completion of high school, she received an occupational diploma.

(Commissioner).[2]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  That final decision is now before the court for review based on the plaintiff's complaint filed on August 17, 2010.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner must be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

## II.  Standard of Review

Pursuant to the Social Security Act, a person may be entitled to "child's insurance benefits" if she is eighteen years old or older and has a disability that began before the age of twenty-two.  20 C.F.R. § 404.350(a)(5).  Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. Issues

As stated by the plaintiff, there are four issues in this case.

1.  Whether the ALJ failed to properly apply the evaluation standard for children's disability claims.

2.  Whether the ALJ erred by failing to properly use the Vocational Expert.

3.  Whether the ALJ erred by failing to properly evaluate Ms. Grimsley's residual functional capacity.

4.  Whether the ALJ's credibility finding is based on substantial evidence.

(Pl's Br., doc. # 11 at 1).  The court will discuss the issues, but not in the order presented by Grimsley.

## IV. Discussion

**A. The Sequential Evaluation Claim.**  Grimsley was 17 years old at the time she applied for benefits.  She, therefore, contends that the ALJ should have evaluated her claim under the three step sequential evaluation process established for children's disability claims. The five step sequential evaluation process applies to claims for CIB based on disability.  20 C.F.R. § 404.1520(a)(2).  Thus, plaintiff's contention that the ALJ should have applied the

4

three step sequential evaluation for child impairment cases is simply wrong as a matter of law.

    **B. The Credibility Issue.**  This is the fourth issue raised by the plaintiff who states the claim in this manner.  "In Ms. Grimsley's case, the ALJ found that the claimant's statements concerning her impairments and their impact on her ability to work are considerably more limited and restricted than is established by the medical evidence. (R. 17). This finding is not based on substantial evidence." (Pl. Br. at 10).  Where an ALJ decides not to credit a claimant 's testimony about pain (or other non-exertional impairments), the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v.Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Department of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991)(articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

    The ALJ found that the plaintiff could perform a limited range of sedentary work. (R. at 19).  Part of that finding is based on her impairment of chronic cysts and infections, and it is that impairment which is at the center of this issue.   As to the cysts, the ALJ said this:

> The claimant has been diagnosed with chronic cysts/infections. She has had nodules recurring in the left axilla, left inguinal area, and the left buttocks. Treatment has included antibiotics and incisions and drainages. She had an incision and drainage of a recurrent pilonidal abscess in June 2008 (Exhibits

5

10F and 18F). The cyst returned and she underwent a subsequent incision and drainage approximately two weeks after the first (Exhibits 16F and 18F). She underwent an excisional debridement of a left breast mass, abscess in November 2008 (Exhibit 15F). She was treated for abscesses in March, May, and August 2009 (Exhibit 17F). She was treated for sores around the groin and/or vulva in September 2008 and June, October, and November 2009(Exhibits 23F and 22F). In January 2010, the claimant was evaluated for these cysts at the University of Alabama at Birmingham clinic (Exhibit 26F). She was diagnosed with recurrent cellulitis, furuncles and scarring on examination consistent with hidradenitis suppurative.  Physical examination of the external genitalia, vagina, and/or skin in November and December2008 and April and December 2009 revealed no inflammatory lesions (Exhibits 23F and 24F).The absence of any lesions at these examinations shows that the cysts/infections are not constant and that treatment is effective; however, the claimant credibly has limitations resulting from the cysts and infections. She has periodic flare-ups that are treated with antibiotics and incisions and drainages, but these exacerbations do not occur to such an extent as to require consistently significant absences from work for ongoing treatment. On the other hand, the pain and discomfort limit the claimant's ability to perform exertional activities. As a result, she is able to lift and carry up to ten pounds occasionally, sit for six hours in an eight hour workday, and stand and/or walk for two hours in an eight hour workday.

(R. at 15).

Most of Grimsley's argument about credibility is a legal argument reciting case law.

The only contention directly related to the facts of this case is as follows.

In corroboration with her medical records, testimony at Ms. Grimsley's hearing revealed that she had six active lesions at that time. (R. 31). She testified that the painful lesions around her buttocks and groin area made it difficult for her to sit and she often had to seek hospital treatment for removal and drainage of the boils. (R. 40, 42). Had the ALJ found the claimant's testimony as fully credible, she would be unemployable due to her physical impairment and absences from work for continuous treatment.

(Pl. Br. at 12).

The mere fact that at the time of the hearing Grimsley had active lesions does not

6

refute the conclusion of the ALJ that the lesions "do not occur to such an extent as to require consistently significant absences from work for ongoing treatment." (R. at 15). A review of the medical records supports that conclusion with substantial evidence. No relief is warranted as to this issue.

### C.  The Vocational Expert and the Jobs Issues.[5]

After carefully considering all of the plaintiff's impairments, the ALJ found that Grimsley has

> the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). She must avoid concentrated exposure to pulmonary irritants. She is able to understand, remember, and carry out very short and simple instructions. She can attend to tasks for two hour periods. She is limited to jobs where changes in the work environment are kept to a minimum.

(R. at 14).

Having made that finding, the ALJ then used the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, (the grids) as a framework for his decision making to conclude the following.

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.24. However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work. The

---

[5]  As will be seen, the court conflates consideration of the second and third issues raised by the plaintiff. As stated by the plaintiff, the second issue was that the ALJ failed to properly use the vocational expert. Actually, the ALJ didn't use him at all, and that failure really matters in this case. The third issue was the failure of the ALJ at step five of the sequential analysis to articulate specific jobs the plaintiff could perform.

need to avoid concentrated exposure to pulmonary irritants does not
significantly erode the occupational base of sedentary work according to Social
Security Rulings 83-14, 85-15, and 96-9P. The remaining limitations regarding
the claimant's mental abilities do not significantly erode the occupation base
of sedentary work according to Social Security Ruling 96-6P. Therefore, a
finding of "not disabled" is appropriate under the framework of
Medical-Vocational Rule 201.24.

This conclusion was error.  "There are two avenues by which the ALJ may determine

whether the claimant has the ability to adjust to other work in the national economy."

*Phillips*, 357 F.3d at 1239.  First, the ALJ may apply the grids.  Secondly, the ALJ may

consult a vocational expert (VE) by posing hypothetical questions to the VE to establish

whether someone with the claimant's impairments would be able to find work in the national

economy.  *Id*. at 1239-40. The grids provide tables based on work classifications of

sedentary, light, medium, heavy or very heavy. These classifications are based on the

exertional level, or "primary strength activities," the work requires, such as sitting, standing,

walking, lifting, carrying, pushing, and pulling. S.S.R. 83-10.  Each table considers

vocational factors, such as age, education and work experience, to "direct a conclusion" of

either disabled or not disabled. *See generally*, 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).

These tables constitute "administrative notice" as to the number of unskilled jobs that exist

in the national economy at the various exertional levels.  Thus, when all the claimant's

vocational factors coincide with the criteria in the table, "the existence of jobs is established."

20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).

The Eleventh Circuit repeatedly has recognized that "exclusive reliance on the grids

is not appropriate either" (1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or (2) "when a claimant has non-exertional impairments [i.e., impairments not related to strength] that significantly limit basic work skills."[6] *See Phillips*, 357 F.3d at 1242 (internal brackets omitted); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992) ("This court has recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of the claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level.").  *See also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).  In either of these cases, a claimant's occupational base (the number of jobs she is able to perform based on her residual functional capacity, age, education and work experience) may be affected.  *See* S.S.R. 83-12 (explaining that when a claimant's exertional limitations do not coincide with a particular exertional level in the grids, the adjudicator may need to consult a vocational expert to determine the extent of any erosion in the occupational base); S.S.R. 83-14 (explaining that when nonexertional impairments are present, the occupational base may be significantly narrowed and the ALJ may need to consult a vocational expert). Thus, in these kinds of cases, the ALJ must make an individualized assessment and consult a vocational expert to determine whether there are jobs in the

---

[6] Nonexertional activities include maintaining body equilibrium, crouching, bending, stooping, using fingers, seeing, hearing or speaking, mental functions and tolerating environmental working conditions. S.S.R. 83-14. Reliance solely on the grids is inappropriate when nonexertional limitations are present because the grids take into account only exertional limitations in classifying levels of work as sedentary, light, medium or heavy and do not address nonexertional limitations. *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

9

economy the claimant can perform. *See Phillips*, 357 F.3d at 1242-43.

When the ALJ cannot rely solely on the grids, the ALJ nonetheless "may use [the grids] as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Smith v. Bowen*, 792 F.2d 1547, 1554-55 (11th Cir. 1986) (stating that the grids "may serve as a framework for consideration of the combination of the exertional and nonexertional limitations"). The regulations likewise recognize that the grids can "still provide guidance for decision making." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d); *accord id*. § 200.00(e)(2).[7]

In Grimsley's case, the ALJ did not obtain independent evidence of the existence of jobs as required by the law of this circuit. That error alone is enough to warrant reversal and remand. However, even if the ALJ were correct that reliance on the framework of the grids was sufficient in a case like this, he still committed error. The ALJ relied on S.S.R. 96-9p,

---

[7] The regulations state that when there is a combination of exertional and nonexertional limitations, the grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e)(2). If not, then the grids "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id*. "Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under" the grids, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." *Id*. If the issue of occupational base erosion is complex, the ALJ "may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e); *see also* S.S.R. 83-14 (stating that in complex situations, "the assistance of a vocational resource may be necessary").

a Social Security Ruling which deals with "the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work." Specifically, with respect to Grimsley's mental impairments, the ALJ relied upon S.S.R. 96-9p for his conclusion that her "mental abilities do not significantly erode the occupation base of sedentary work according to Social Security Ruling 96-6P." That ruling states as follows:

> A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work:
>
> * Understanding, remembering, and carrying out simple instructions.
> * Making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions.
> * Responding appropriately to supervision, co- workers and usual work situations.
> * Dealing with changes in a routine work setting.
>
> A less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and a judgment made as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.

The ALJ concluded that Grimsley has the following limitations as a result of her mental impairments: "She is able to understand, remember, and carry out very short and simple instructions. She can attend to tasks for two hour periods. She is limited to jobs where

changes in the work environment are kept to a minimum." (R. at 17).  To support this
conclusion, the ALJ places great weight on the opinion of "Dr. Green," who is actually Dr.
Jordan, noting his agreement that Grimsley's "ability to respond well to co-workers,
supervision, and everyday work pressures is mildly compromised secondary to psychiatric
issues." (R. at 17).  The record, however, is replete with references to Grimsley's behavioral
difficulties, especially with her mother and teachers, who are all authority figures.  A fair
reading of all of Grimsley's treatment records show episodes of behavioral difficulty
followed by improvement followed by relapse.  For example, Dr. McDowell's March 9,
2006, clinic notes poignantly report that Grimsley "is doing poorly.  She has been physically
aggressive toward her mother.  Police were called but there was no place to put her." (R. at
261).  This occurred after a January 26, 2006, report that Grimsley and her mother were
"much better" tolerating each other. (R. at 262).  This improvement came after a January 17,
2006, report that Grimsley and her mother "are having a terrible time  . . . [Grimsley] is
having difficulty controlling her behavior and is speaking disrespectfully." (R. at 263).

Dr. Jordan observed that Grimsley's ability to respond to coworkers, supervision and
everyday work pressure "is mildly compromised secondary to psychiatric issues, and he also
noted Grimsley's intermittent explosive disorder, additionally commenting that "there is no
sorrow post-explosion." (R. at 385).  Other that the work pressure observation, there is
absolutely nothing in Dr. Jordan's report about Grimsley's ability to deal with *changes* in a
routine work setting.  Of course, when he describes Grimsley's mental impairments, the ALJ

does preface that description with the phrase "[b]ased on the evidence of record, including Dr. Green's report . . ."  The only evidence that the court could find in the record about that aspect of S.S.R. 96-9p's mental activities required for a job is an assessment done by a non-examining psychologist. (R. at 402).  And that assessment, of course, unless it is consistent with other medical evidence is not entitled to much if any weight.  *See  Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir. 1990); *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985).

All of this is simply to say that the ALJ failed to explain why in this complex and difficult case, he chose to base his opinion on the grids as a framework, especially when a vocational expert was present to testify.  Undoubtedly, creating a hypothetical question which accounted for all of Grimsley impairments might have been difficult, but that is no reason to not use the services of a vocational expert.  S.S.R. 96-9p says

> The individual's remaining capacities must be assessed and a judgment made as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.

Grimsley's abilities in numerous areas are limited to the extent that the ALJ concluded that she could not perform a full range of sedentary work.  As a consequence, the court concludes that the law of this circuit demands that in order for the ALJ to conduct the required individualized assessment of Grimsley a vocational expert should have been consulted at step five of the sequential analysis to determine whether someone with her

13

compromised abilities can perform any jobs in the national economy.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate order will issue.

Done this 8th day of September, 2011.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE